**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\*\*\***

| | |
|---|---|
| TOYO TIRE & RUBBER CO. LTD., *et al*., <br><br> Plaintiffs, <br><br> vs. <br><br> KABUSIKIKI KAISHA TOKYO NIHOON RUBBER CORP., *et al*., <br><br> Defendants. | Case No. 2:14-cv-01847-JAD-VCF <br><br> <u>**AMENDED**</u> <br> <u>**REPORT & RECOMMENDATION**</u> <br><br> MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION (#18, #20) |

     This matter involves Toyo Tire & Rubber Company's trademark-infringement action against Kabusikiki Kaisha Tokyo Hihoon Rubber Corporation and others. *See* (Compl. (#1) at ¶¶ 24–29[1]). Before the court is Toyo's Motion for Default Judgment and Permanent Injunction (#18, #20). They are unopposed. For the reasons stated below, Toyo's motions should be granted in part and denied in part.

**BACKGROUND**

     Toyo Tire & Rubber Company ("Toyo") is a Japanese corporation and one of the world's most renowned manufacturers and distributors of tires. (Compl. (#1) at ¶¶ 5, 12). Toyo prides itself for its technological innovations and the quality of its products. (*Id*. at ¶ 12). In the United States, Toyo has been named "#1 Overall Brand" by North American Tire Dealers in *Tire Review Magazine's* "Annual Tire Brand Study." (*Id*.)

     Since at least as early as 1945, Toyo has continuously used and promoted the TOYO mark in connection with a wide variety of tires. (*Id*. at ¶ 13). Toyo sells tires under the TOYO and TOYO M/T

---

[1] Parenthetical citations refer to the court's docket.

marks. (*Id.*) Toyo has made exclusive and continuous use of the TOYO mark in connection with the tire industry internationally since at least as early as 1945, and in the United States since at least as early as 1966. (*Id.*) Toyo has more than 2,000 independent tire dealers in the United States and has distributors in 120 other countries and territories throughout the world. (*Id.* at ¶ 13).

Kabusikiki Kaisha Tokyo Nihoon Rubber Corp. and its affiliates[2] (collectively "Kabusikiki") are Chinese corporations. (*Id.* at ¶ 24). They hold themselves out as Japanese and Delaware companies but have no presence in either location. (*Id.* at ¶¶ 25–26). Kabusikiki is allegedly selling counterfeit Toyo tires in, among other places, Las Vegas, Nevada. (*Id.* at ¶¶ 34–6).

Toyo alleges that this conduct violates common law and federal law, including the Lanham Act, 15 U.S.C. § 1125, which prohibits a person from, *inter alia*, using another's registered trademark for profit. Toyo commenced this action on November 4, 2014. Kabusikiki was served but has failed to plead or otherwise defend. (Summons #11); (Mot. Default J. #18). On February 17, 2015, the clerk of court entered default against the Kabusikiki. (Doc. #17). Now, Toyo moves for default judgment and requests a permanent injunction.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs default judgment. It states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). After the Clerk of Court enters a default, the plaintiff must petition the court to obtain a default judgment. FED. R. CIV. P. 55(b)(2).

---

[2] For purposes of this report and recommendation, Kabusikiki Kaisha Tokyo Nihoon Rubber Corp.'s affiliates include Japan Toyomoto Tire Corp., Toyomoto (Beijing) International Trading Co., and Toyomoto Tire (US) Inc.

Before considering whether default judgment should be entered, the court has "an affirmative duty" to ensure that it has personal jurisdiction over the defaulted defendant and subject-matter jurisdiction over the plaintiff's action. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citing *Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). A judgment without jurisdiction is void. *Id*. (citations omitted).

If jurisdiction exists, the court's decision to enter default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also Heidenthal*, 826 F.2d at 917 ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment.").[3] Generally, the court accepts the factual allegations in the plaintiff's complaint as true but requires the plaintiff to prove damages. *Televideo Video Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

The Ninth Circuit has adopted seven factors that courts "may" consider when adjudicating a motion for default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citing 6 MOORE'S FEDERAL PRACTICE ¶ 55-05[2], at 55-24 to 55-26). The factors are: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72 (applying four of the seven factors).

## DISCUSSION

The court must engage in three inquiries when recommending default judgment against Kabusikiki: (1) whether the court can enter default judgment (*i.e.*, does jurisdiction exist?); (2) whether

---

[3] Federal Rule of Civil Procedure 54(c) limits the court's discretion in one respect. It states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

the court should enter default judgment (*i.e.*, do the *Eitel* factors favor Toyo?); and (3) whether Toyo has proven entitlement to permanent injunctive relief and damages. Each inquiry is addressed below.

## I.   **Whether Jurisdiction Exists**

The court's analysis of Toyo's motion begins with jurisdiction. *In re Tuli*, 172 F.3d at 712. When examining a motion for default judgment, the court has "an affirmative duty" to ensure that it has personal jurisdiction over the defaulted defendant and subject-matter jurisdiction over the plaintiff's action. *Id*. Generally, jurisdictional allegations must be plausible. *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014) *cert. denied*, 14-119, 2014 WL 3817554 (U.S. Oct. 14, 2014). However, on a motion for default judgment, the court accepts the plaintiff's allegations as true. *Heidenthal*, 826 F.2d at 917–18. As discussed below, the court finds that it has subject-matter jurisdiction over Toyo's action and personal jurisdiction over Kabusikiki.

### A.   *Subject-Matter Jurisdiction*

Toyo predicates the court's subject-matter jurisdiction on 28 U.S.C. § 1331, which grants district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Toyo's complaint seeks relief under the Lanham Act, 15 U.S.C. § 1125(d), which is a law of the United States. *S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 926 (9th Cir. 2014). Additionally, the Lanham Act itself "grants the federal district courts original jurisdiction over all actions arising under it." *Id.* (citing 15 U.S.C. § 1121(a)); *see also Steele v. Bulova Watch Co*., 344 U.S. 280, 286 (1952) (stating that the Lanham Act creates a "broad jurisdictional grant"). The pertinent part of Toyo's complaint is based on the provision of the Lanham Act codified at 15 U.S.C. § 1125, which "protects against infringement of unregistered marks and trade dress as well as registered marks." Because Toyo does not seek extraterritorial application of the Lanham Act, the court's subject-matter jurisdiction inquiry ends here. (Doc. #22 at 5:4) ("Toyo does not seek extraterritorial application of the Lanham Act").

### B.   *Personal Jurisdiction*

Next, the court considers whether it has personal jurisdiction over Kabusikiki. A federal district court may only exercise personal jurisdiction over a defendant if two requirements are met. *Sec. & Exch. Comm'n v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (citation omitted).[4] First, the court must have a basis for asserting jurisdiction. *Id*. That is, the plaintiff must satisfy the minimum-contacts test. *See id*. Second, the plaintiff must perfect the mechanism for asserting jurisdiction. *Id*. That is, the plaintiff must properly serve the defendant under Rule 4. *Id*.

Toyo satisfied both requirements. With regard to the court's basis for asserting personal jurisdiction, the court may exercise specific personal jurisdiction over a nonresident defendant if three requirements are met. That is, (1) the defendant must have purposefully directed activities at a resident in the forum, (2) the plaintiff's claim arises from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002). Where a plaintiff's claim for relief arises out of a defendant's activities at a trade show, a federal district court has personal jurisdiction over the defendant because it "purposely availed" itself of the privilege of participating in tradeshow. *Robert Bosch LLC v. Juijiang Yada Traffic Equip. Co.*, No. 2:10–cv–1926–JCM–LRL, 2011 WL 1322534, at *2 (D. Nev. Apr. 4, 2011) (citing *Firouzabadi v. First Judicial Dist. Court*, 110 Nev. 1348, 885 P.2d 616, 619–21 (Nev. 1994)).

Toyo satisfied this three-part test. First, Toyo alleged that "[t]his Court has personal jurisdiction over the Defendants based upon their infringing acts of advertising, displaying, and offering tires and

---

[4] A federal district court may also exercise personal jurisdiction over a defendant if the defendant waives the defense of insufficient service of process and lack of personal jurisdiction. FED. R. CIV. P. 12(h)(1). Because Kabusikiki failed to plead or otherwise defend against Toyo's claims, this basis is not relevant.

related products for sale in Las Vegas, Nevada at SEMA." (Compl. #1 at ¶ 3). If, as here, a nonresident defendant intentionally harms a plaintiff in the forum, then the first prong of the court's jurisdictional inquiry is satisfied. *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

Second, Toyo's claims of trademark infringement and counterfeiting arise directly out of Kabusikiki's attendance at the 2014 SEMA trade show in Las Vegas, Nevada. (*Id.*) Therefore, Toyo's claim "arises from the defendant's forum-related activities:" infringing upon Toyo's intellectual property. *Rudzewicz*, 471 U.S. at 472.

Finally, the court notes that the third prong—(*viz.*, whether the exercise of jurisdiction over the defendant is reasonable)—is satisfied. Where the first two prongs are met, the court presumes that the exercise of jurisdiction is reasonable and the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Rudzewicz*, 471 U.S. at 477. Because Kabusikiki defaulted, this inquiry is moot. *See, e.g.*, *Mayweather v. Wine Bistro*, No. 2:13–cv–210–JAD–VCF, 2014 WL 6882300, at *5 (D. Nev. Dec. 4, 2014) (Dorsey, J.) ("Because The Wine Bistro and 2nd To None Entertainment have defaulted, this inquiry is moot.").

In addition to satisfying the minimum-contacts test, Toyo perfected the mechanism for asserting jurisdiction over Kabusikiki. That is, Toyo properly served Kabusikiki under Rule 4. (*See* Docs. #6, #11, #12). Therefore, the court finds that it has personal jurisdiction over Kabusikiki.

## II.   **Whether the *Eitel* Factors Favor Default Judgment**

Because the court's jurisdictional requirements are satisfied, the court proceeds to the second question: whether the court should enter default judgment under *Eitel*. This decision is discretionary and informed by seven factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action;

6

(5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72; *Aldabe*, 616 F.2d at 1092. Each is addressed below.

### A.    *The First* Eitel *Factor*

The first factor—(*viz.*, the possibility of prejudice to Toyo)—favors entering default judgment. Toyo is one of the world's most well-known manufacturer and distributors of tires. (Compl. #1 at ¶ 12). It has repeatedly been named #1 Overall Brand by North American Tire Dealers in Tire Review Magazine's Annual Tire Brand Study. (*Id.*) Kabusikiki was made aware of its infringing conduct when it was served with a summons and complaint at the 2014 SEMA trade show. However, Kabusikiki has not plead or otherwise defended against Toyo's claims. This constitutes prejudice. *See PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Potential prejudice to Plaintiffs favors granting a default judgment. If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."); *Coach Servs., Inc. v. YNM, Inc.*, No. 2:10–cv–02326–JST (PLAx), 2011 WL 1752091, at *2 (C.D. Cal. May 6, 2011) (finding that the first *Eitel* factor favored the plaintiff because the defendant infringed the plaintiff's trademark rights and thereby harmed the plaintiff's reputation).

### B.    *The Second & Third Factors*

The second and third *Eitel* factors—(*viz.*, the merits of Toyo's claims and the sufficiency of its complaint)—also favor entering default judgment. To warrant default judgment, the complaint's allegations must be sufficient to state a claim upon which relief can be granted. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (Kennedy, J.). Toyo's complaint satisfies this standard because its claims "cross the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

Toyo's complaint states seven claims for relief that derive from the same nucleus of operative facts: (1) trademark counterfeiting under the Lanham Act, 15 U.S.C. § 1114; (2) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1); (3) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (4) trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c); (5) cybersquatting under the Lanham Act, 15 U.S.C. § 1125(d); (6) common law trademark and trade name infringement; and (7) common law unfair competition. However, Toyo's Motion for Default Judgment "limit[s] its discussion to trademark infringement (Count II) and cybersquatting (Count V)." (Doc. #18 at 15 n. 1).

### 1.    Trademark Infringement

To state a claim for trademark infringement, a plaintiff must allege: (1) ownership of a valid, protectable mark; and (2) that the alleged infringer is using a confusingly similar mark. *Herb Reed Enter., LLC v. Florida Entm't Mgm't, Inc*., 736 F.3d 1239, 1247 (9th Cir. 2013). Toyo complaint satisfies both elements.

First, Toyo alleged the ownership of valid trademarks. The Complaint states that, "Toyo's TOYO mark also has been registered with the United States Patent and Trademark Office ("USPTO") since 1967 (Reg. No. 839,584)." (Compl. #1 ¶ 15). It also that "[e]ach of the above-identified registrations is presently owned by Toyo Tire & Rubber Co., Ltd., was duly and legally issued, and is valid and subsisting. Registration Nos. 3112389, 1176052, 839584, 3496019, 3356321, 3409258, and 3409221 are now incontestable pursuant to 15 U.S.C. § 1065." (*Id*. ¶ 17). "Federal registration of a trademark constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use that mark in commerce." *Quiksilver, Inc. v. Kymsta Corp*., 466 F.3d 749, 755 (9th Cir. 2006).

Second, Toyo's complaint must show that Kabusikiki used "a confusingly similar mark." *Herb Reed*, 736 F.3d at 1247. Courts examine eight factors—(*i.e.*, the *Sleekcraft* factors)—when determining whether a plaintiff satisfied this element. These eight factors are: (1) strength of the mark; (2) proximity

8

of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1030 (9th Cir. 2010) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)). Toyo satisfied these factors and, therefore, the second element.

With regard to the **first** *Sleekcraft* factor, Toyo has shown that it has a strong mark. The stronger a mark, the greater the protection it is accorded by trademark laws. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011). Marks are classified as either: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998). Suggestive, arbitrary, and fanciful marks are inherently distinctive and strong, and do not require proof of secondary meaning to be protected. *Id.* "Arbitrary marks have no relevance to any feature or characteristic of a product." *Id.* at 1047 n.8. "Fanciful marks are the most distinctive marks of all; they involve a high degree of imagination." *Id.*

Toyo's complaint alleges that it uses the TOYO mark on tires. (Compl. #1 at ¶¶ 13-17). The TOYO mark is an arbitrary mark because it has no relation whatsoever to tires. *See, e.g.*, *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1390 (9th Cir. 1993) (stating that Kodak is an arbitrary or a fanciful mark that deserves wide protection because it is a coined word or phrase invented solely to function as a trademark that has no relation to cameras or film). Accordingly, this factor weighs heavily in favor of a likelihood of confusion.

With regard to the **second** *Sleekcraft* factor, Toyo has shown that there is a sufficiently close proximity of the goods. This factor considers a common-sense intuition that the danger of consumer confusion is heightened where goods are related or complimentary. *See E. & J. Gallo*, 967 F.2d at 1291

(citing *Sleekcraft*, 599 F.2d at 350). The Ninth Circuit defines "relatedness" broadly, typically requiring only that the parties participate in the same general industry. *See, e.g.*, *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1128, 1131 (9th Cir. 1998) (finding relatedness where a plaintiff's business was organizing Star Trek conventions and a defendant was a film studio that "participates more generally in the entertainment business"). Direct competition between the parties is not required. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 832 (9th Cir. 1991). Here, the complaint alleges that both Toyo and Kabusikiki are using their competing marks on the same tires. (Compl. (#1) at ¶¶ 12–17, 20, 32, 37). This factor weighs in favor of a likelihood of confusion.

With regard to the **third** *Sleekcraft* factor, Toyo has shown that the two marks are similar. "[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). Similarity is determined based on sight, sound and meaning and overall commercial impression of the marks as they appear in the marketplace. *Id*. The degree of similarity required to create a likelihood of confusion is incapable of exact general definition. 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:20 (4th ed. 2006 & Supp. 2015). However, "[o]ne thing is very clear: 'exact similitude is not required' between the allegedly confusing marks. *Id*. (quoting *McLean v. Fleming*, 96 U.S. 245 (1878)).

Here, Toyo's complaint alleges that the Kabusikiki is using a mark—(*viz.*, TOYOMOTO)—that incorporates Toyo's TOYO mark in its entirety. (Compl. (#1) at ¶¶ 27, 31, 32, 38). Toyo alleges that Toyomoto has taken Toyo's "TOYO" mark and simply added the word "MOTO" onto the end of it: "[t]he Defendants are using the TOYO mark as the dominant portion of their corporate names and trademarks that appear on their tires." (Compl. (#1) at ¶ 27). The complaint also alleges that, "[t]he Defendants' use of the TOYOMOTO designation highlights the word TOYO, further increasing the likelihood of

confusion," in part, because "[t]he TOYOMOTO mark is substantially indistinguishable and confusingly similar to the TOYO Marks." (*Id*. ¶¶ 31, 38.)

The addition of a generic term to the dominant portion of a mark does not prevent consumer confusion. 4 MCCARTHY, *supra* at § 23:50. Here, the "MOTO" component of Kabusikiki's mark is generic for "motor" or "automotive." Kabusikiki's addition of the word "MOTO" to Toyo's distinctive and strong TOYO mark does little to nothing to reduce the likelihood of confusion. Given that Kabusikiki's TOYOMOTO mark incorporates Toyo's TOYO mark in its entirety, the complaint alleges the parties' competing use of highly similar marks. *See, e.g.*, *Motion Picture Ass'n of America, Inc. v. Respect Sportswear, Inc.*, 83 U.S.P.Q.2d 1555, 2007 WL 1144942 (T.T.A.B. 2007) (holding RATED R SPORTSWEAR likely to cause confusion with plaintiff's RATED R mark); *In re Paper Doll Promotions, Inc.*, 84 U.S.P.Q.2d 1660, 2007 WL 2344667 (T.T.A.B. 2007) (holding PAPER DOLL PROMOTIONS likely to cause confusion with PAPER DOLL mark). This factor weighs heavily in favor of a likelihood of confusion.

With regard to the **fourth** *Sleekcraft* factor, Toyo concedes that its complaint does not allege any documented instances of actual confusion among consumers. However, failing "to prove instances of actual confusion is not dispositive against a trademark plaintiff" because "difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1131 (9th Cir. 2014). This factor weighs slightly against Toyo.

With regard to the **fifth** *Sleekcraft* factor, Toyo has shown that there is an overlap in the parties' marketing channels. Converging marketing channels increase the likelihood of confusion. *Sleekcraft*, 599 F.2d at 353. In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products. N*utri/System, Inc. v. Con–Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987). Marketing channels can converge even when different

submarkets are involved so long as "the general class of [. . .] purchasers exposed to the products overlap." *See Sleekcraft*, 599 F.2d at 353 (finding convergence where both companies sold boats to authorized retail dealers in diverse localities, used the same sales methods, advertised extensively through different national magazines, and priced their products almost identically).

Toyo's complaint alleges the overlap between the parties' respective marketing channels. It states that both Toyo and Kabusikiki advertise and market their tires through the use of Internet websites and social media websites. (Compl. (#1) at ¶¶ 21, 23, 29). It also states that the parties' use of their respective marks at the very same trade show in Las Vegas, Nevada and even in the same exhibition hall. (Compl. (#1) at ¶ 34). This factor weighs heavily in favor of a likelihood of confusion.

With regard to the **sixth** *Sleekcraft* factor, Toyo concedes that it does not weigh in its favor. (Doc. #18 at 19–20) ("Accordingly, the factor weighs against a finding of likely confusion.").

With regard to the **seventh** *Sleekcraft* factor, Toyo has shown that Kabusikiki most likely intended to infringe upon Toyo's mark. "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Network Automation, Inc.*, 638 F.3d at 1153 (quoting *Sleekcraft*, 599 F.2d at 354)).

Here, Toyo alleges that Kabusikiki knowingly adopted the TOYOMOTO mark to trade off of the substantial goodwill Toyo has developed in its TOYO mark through years of use in commerce and substantial advertising, promotion, and investment: "the Defendants had constructive knowledge of Plaintiff's TOYO Marks, prior to their first use of their infringing TOYOMOTO company name and mark." (Compl. (#1) at ¶ 39). Toyo further alleges that Kabusikiki was aware of Toyo's superior rights in the TOYO mark because Toyo has asserted its rights in foreign trademark opposition proceedings:

12

[t]he Defendants nevertheless intentionally adopted the TOYOMOTO mark to take advantage of the tremendous reputation and goodwill of the famous TOYO . . . "[t]he Defendants knew or should have known that the TOYOMOTO mark, company names, and domain names infringe and/or dilute the TOYO Marks. Thus, the Defendants acted knowingly, willfully, and in bad faith.

(*Id*. at ¶¶ 40–2.) These allegations require the court to "presume an intent to deceive the public." *Goss*, 6 F.3d at 1394. Accordingly, this factor weighs heavily in favor of a likelihood of confusion.

With regard to the **eighth** *Sleekcraft* factor, Toyo must show a likelihood of expansion of the product lines. Here, "[t]he question is whether the parties are likely to compete with a similar product in the same market." *Goss*, 6 F.3d at 1394. Toyo's complaint alleges that Toyo and Kabusikiki each sell tires to the same class of consumers. (Compl. (#1) at ¶ 33) ("the Defendants market their tires to the same class of consumers as TOYO"). Because the parties already compete with similar products in the same markets, this factor is neutral. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999) ("The likelihood of expansion of product lines factor is relatively unimportant where two companies already compete to a significant extent.").

In conclusion, the first, second, third, fifth, and seventh *Sleekcraft* factors weigh in favor of a finding of likely confusion. Accordingly, Toyo has sufficiently alleged a likelihood of confusion resulting from the Defendants' use of the TOYOMOTO mark. *E Clampus Vitus v. Steiner*, No. 2:12–cv–1381–TLN, 2013 WL 4431992, at *10 (E.D. Cal. Aug. 16, 2013) (citing *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006)) ("Plaintiff sufficiently alleges a "likelihood of confusion" because it has made a strong showing of facts supporting a majority of the *Sleekcraft* factors."); *but see Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002), *superseded on other grounds* Trademark Dilution Revision Act of 2006, Pub. L. No. 108312, 120 Stat. 1730 (codified at 15 U.S.C. § 1125) ("The list of factors is not a score-card—whether a party wins a majority of the factors is not the point. Nor should the factors be rigidly weighed; we do not count beans.").

Therefore, Toyo's Motion for Default Judgment should be granted on its trademark-infringement claim.

          2.    <u>Cybersquatting</u>

Toyo's Motion for Default Judgment also seeks judgement against Kabusikiki on its cybersquatting claim. To state a claim for cybersquatting a plaintiff must allege: (1) that the defendant had a bad faith intent to profit from the plaintiff's trademark; (2) that the defendant registered, trafficked in, or used a domain name that is identical to, confusingly similar to, or dilutive of, (3) plaintiff's distinctive or famous mark. *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010) (citing 15 U.S.C. § 1125(d)).

Toyo's complaint satisfies these three elements. First, Toyo plausibly alleges Kabusikiki's bad faith intent to profit from the TOYO mark. In pertinent part, the complaint states:

> The Defendants . . . intentionally adopted the TOYOMOTO mark to take advantage of the tremendous reputation and goodwill of the famous TOYO Marks, and continue to do so knowing of the irreparable harm that they have caused and will continue to cause Toyo, its marks, and the public. The Defendants knew or should have known that the TOYOMOTO mark, company names, and domain names infringe and/or dilute the TOYO Marks. Thus, the Defendants acted knowingly, willfully, and in bad faith.

(Compl. (#1) at ¶¶ 39–42). Toyo satisfied the first element because the court must accept this allegation as true on a motion for default judgment. *See Heidenthal*, 826 F.2d at 917–18.

Toyo also satisfied the second element. The complaint alleges that Kabusikiki registered the <www.toyomototire.com>, <www.toyomototires.com>, and <www.toyomoto-otr.com> domain names, and that they are identical or confusingly similar to the TOYO mark:

> Upon information and belief, the Defendants first adopted, registered, and used the <toyomototire.com>, <toyomototires.com>, and <toyomoto-otr.com> domain names in or about 2010 or 2012 and well after Plaintiff's TOYO marks were first used, registered, and became famous – including its European affiliate's use and registration of the <toyomotorsport.com> domain name. [. . .] The <toyomototire.com>, <toyomototires.com>, and <toyomoto-otr.com> domain names are confusingly similar to and/or dilutive of Toyo's famous TOYO Marks.

14

(Compl. (#1) at ¶¶ 30–82).

Third, Toyo's complaint plausibly alleges that the TOYO mark is an inherently distinctive arbitrary mark. (*Id.* at ¶ 19). As discussed above, the TOYO mark has no intrinsic connection to tires or automotive products. This entitles the mark to a broad scope of protection. *Goss*, 6 F.3d at 1390.

Therefore, Toyo's Motion for Default Judgment should be granted on its cybersquatting claim.

## C.     *The Remaining Four* Eitel *Factors*

The remaining four *Eitel* factors favor entering default judgment. The fourth factor considers the sum of money at stake in the action. *Eitel*, 782 F.2d at 1471–72. The question here is whether the damages sought are proportional to the alleged harm. *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). The Lanham Act states that plaintiffs in cybersquatting cases may elect an award of statutory damages at any time before final judgment is rendered in the amount "not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). Toyo seeks the statutory maximum for each of the three infringing domain names. The court finds that it is proportional.

Toyo's complaint plausibly alleges that Kabusikiki's acts of cybersquatting were willful. Toyo began using its TOYO mark at least as early as 1945 and first registered its mark in the United States in 1967. (Compl. (#1) at ¶¶ 12–16.) Kabusikiki did not begin using the TOYOMOTO mark until at least 2010. (*Id.* ¶ 28.) Kabusikiki knows it is violating Toyo's rights because Kabusikiki was served with a summons and a complaint and continues to advertise, promote, and sell tires worldwide with the TOYOMOTO mark through the <www.toyomototire.com>, <www.toyomotorires.com>, and <www.toyomotootr.com> domain names. Accordingly, the fourth *Eitel* factor weighs in favor of entering default judgment against Kabusikiki.

15

The fifth *Eitel* factor examines the possibility of a dispute concerning material facts. *Eitel*, 782 F.2d at 1471–72. There is little possibility of a dispute here. Toyo's complaint is plausible under *Iqbal* and supported by photographs, federal trademark registrations, and detailed allegations showing that Kabusikiki infringed upon Toyo's trademark rights. (*See generally* Compl. (#1) at ¶¶ 15–18, 32–46). This satisfies the fifth factor. *Wecosign, Inc.*, 845 F. Supp. 2d at 1082 ("Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote."); *Landstar Ranger*, 725 F. Supp. 2d at 921–22 ("Since [plaintiff] has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.").

The sixth *Eitel* factor considers whether a defendant's default may have been the product of excusable neglect. *Eitel*, 782 F.2d at 1471–72. This factor favors default judgment where, as here, the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit. *Landstar Ranger*, 725 F. Supp. 2d at 922; *see also* (Docs. #6, #11, #12) (demonstrating that Defendants were properly served with a summons and a complaint).

The final factor—(*viz.*, the strong policy favoring decisions on the merits)—also favors Toyo. Kabusikiki refuse to participate in litigation despite being served and having actual knowledge of Toyo's claims. Rule 55 was designed to address this problem. *Landstar Ranger*, 725 F. Supp. 2d at 922. Where, as here, it is impossible to adjudicate an action on the merits because a defendant refuses to participate in litigation, the strong policy favoring decisions on the merits is outweighed by the need to finalize controversies in a timely and orderly fashion. Therefore, Toyo's Motion for Default Judgment should be granted.

**III.**     **Whether Toyo has Proven Entitlement to Permanent Injunctive Relief & Damages**

Having determined that default judgment should be entered, one issue remains: whether Toyo has proven entitlement to injunctive relief and damages. Each is addressed below.

**A.**     *Permanent Injunctive Relief*

The court next considers whether it should award Toyo a permanent injunction against Kabusikiki.[5] The Lanham Act "vests the district court with the power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (citing 15 U.S.C. § 1116). A party seeking a permanent injunction must shows: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (citations omitted). The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citation omitted).

Toyo has not shown that a permanent injunction is appropriate here. Although it satisfied the final three elements, Toyo failed to establish that it has suffered an irreparable injury. Traditionally, in the trademark context, "once the plaintiff [had] establishe[d] a likelihood of confusion, it [was] ordinarily presumed that the plaintiff [would] suffer irreparable harm if injunctive relief [were] not granted." *See Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n. 3 (9th Cir. 1989) *overruled by eBay*, 547

---

[5] Toyo's Motion for Default Judgment references an "accompanying proposed permanent injunction." (Doc. #20 at 29:27–28). There is no accompanying proposed permanent injunction.

U.S. at 393. This presumption changed with the Supreme Court's decisions in *eBay* and *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). *See Herb Reed*, 25 F. Supp. 3d at 1249.

Today, "actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action" under the Lanham Act. *Id*. Toyo appears to concede that it has not suffered actual irreparable harm. *See* (Doc. #20 at 19:2–3, 27:25–26) ("Toyo concedes that the Complaint does not allege any documented instance of actual confusion amongst consumers between the TOYO mark and TOYOMOTO." [. . .] "Toyo is likely to suffer irreparable injury because, absent injunctive relief, Toyomoto's infringing conduct is likely to continue.").

Even if Toyo had not conceded that it did not suffer actual irreparable harm, Toyo failed to produce evidence warranting a permanent injunction. To establish irreparable harm, "conclusory or speculative allegations are not enough." *Herb Reed*, 736 F.3d at 1250; *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."); A*m. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (finding irreparable harm not established by statements that "are conclusory and without sufficient support in facts"). Although preliminary relief may be ordered to prevent harm to a movant's reputation and goodwill, a finding of reputational harm may not be based on "pronouncements [that] are grounded in platitudes rather than evidence." *Herb Reed*, 736 F.3d at 1250.

Second, Toyo has shown that remedies at law are inadequate. "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by defendants' continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

Third, Toyo has shown that the balance of hardships favors it. Toyo has expended substantial sums of money using and promoting the TOYO marks, and any harm to Kabusikiki resulting from a permanent

injunction that merely forces it to comply with the requirements of the law merits little to no equitable consideration. *See Burgess v. Gilman*, 475 F. Supp. 2d 1051, 1063 (D. Nev. 2007) aff'd, 316 F. App'x 542 (9th Cir. 2008) ("We further find that the balance of hardships tips in favor of CPS. The undisputed evidence is that Mr. Gilman has expended an extraordinary amount of money in anticipation of his planned use of the marks.").

Fourth, the public interest lies in favor of upholding property interests in trademarks and preventing customer confusion. *See Herb Reed*, 25 F. Supp. 3d at 1327 ("Finally, the public interest would be served by the injunction because it would enable the consuming public to distinguish between [the infringing and non-infringing products]").

### B.   *Monetary Damages*

Finally, the court considers whether Toyo has demonstrated that it is entitled to monetary damages. "Statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008). The Lanham Act states that plaintiffs in cybersquatting cases may elect an award of statutory damages at any time before final judgment is rendered in the amount "not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d).

Toyo seeks the statutory maximum for each of the three infringing domain names (i.e., <www.toyomototire.com>, <www.toyomotorires.com>, and <www.toyomotootr.com>). The court finds that Toyo is entitled to the statutory maximum for each infringing domain name. Toyo's complaint plausibly alleges that Kabusikiki's acts of cybersquatting were willful. Toyo began using its TOYO mark at least as early as 1945 and first registered its mark in the United States in 1967. (Compl. (#1) at ¶¶ 12– 16.) Kabusikiki did not begin using the TOYOMOTO mark until at least 2010. (*Id*. ¶ 28.) Kabusikiki knows it is violating Toyo's rights because Kabusikiki was served with a summons and a complaint and

19

continues to advertise, promote, and sell tires worldwide with the TOYOMOTO mark through the three domain names.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Toyo's Motion for Default Judgment (#18) be GRANTED.

IT IS FURTHER RECOMMENDED that Toyo's Motion for Permanent Injunction (#20) be DENIED.

IT IS FURTHER RECOMMENDED that Toyo be AWARDED the maximum statutory damages against Defendants in the amount of $300,000.00 and postjudgment interest on the principal sum at the judgment rate from the date of entry of the Judgment until paid in full.

IT IS FURTHER RECOMMENDED that FINAL JUDGMENT be entered against all Defendants.

IT IS SO RECOMMENDED.

### NOTICE

Pursuant to Local Rules IB 3-1 and IB 3-2, a party may object to orders and reports and recommendations issued by the magistrate judge. Objections must be in writing and filed with the Clerk of the Court within fourteen days. LR IB 3-1, 3-2. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 8th day of July, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE